# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN SKIPP, et al.<br>        Plaintiffs,<br><br>        v.<br>CONNECTICUT JUDICIAL BRANCH, et<br>al.,<br>        Defendants. | No. 3:14-cv-00141 (JAM) |

## RULING ON PENDING MOTIONS AND MOTIONS TO DISMISS

In the midst of an ongoing child custody battle following lengthy divorce proceedings in Connecticut Superior Court, plaintiff Susan Skipp has filed this federal lawsuit *pro se* and *in forma pauperis* on behalf of herself and her minor children against the Chief Justice of the State of Connecticut, numerous Connecticut judges and judicial branch employees, social service providers, and private attorneys involved in the state court proceedings.[1] Plaintiff's second amended complaint (Doc. #18) is 69 pages long with 348 numbered paragraphs alleging a plethora of federal and state law claims against 30 defendants. Her basic complaint is that she has been mistreated in connection with her custody proceedings in the Connecticut state courts.

The federal courts are not divorce courts. Nor do federal courts have general appellate or supervisory jurisdiction over the decisions or procedures of state family courts. Plaintiff's complaint seeking to overturn the decisions of state court judges does not belong in a federal court. For the reasons that follow, I dismiss plaintiff's claims for lack of jurisdiction and other manifest deficiencies.

---

[1] Because plaintiff Susan Skipp asserts no claims on behalf of her children that are separate from her own claims, I refer to her throughout simply as "plaintiff."

**BACKGROUND**

Plaintiff and her ex-husband married in 1999 and had two children. In 2010, they entered

divorce proceedings in Connecticut Superior Court, and in March 2011, Judge Lloyd Cutsumpas

(a defendant in this case) accepted their marriage dissolution settlement agreement, which

provided a detailed joint custody arrangement. But plaintiff and her ex-husband "almost

immediately . . . plunged into disagreements and disputes," largely in relation to the custody and

care of their children. *Tittle v. Skipp-Tittle*, 2011 WL 7095181, at *1 (Conn. Super. Ct. 2011).

Plaintiff contacted the Connecticut Department of Children and Families (DCF) to initiate

investigations against her ex-husband, alleging that he posed a danger to the children. The

complaints were not substantiated. Plaintiff publicly complained about her ex-husband to his

then-employer, to her children's teachers, and to the parents of their classmates, and she posted

her complaints on the Internet. Meanwhile, she filed motions in Superior Court to amend the

custody arrangements and to challenge previous orders.

Defendant Mary Brigham was appointed by the Superior Court to serve as guardian ad

litem. In that role, she acted as an intermediary between the parties and made recommendations

to the Superior Court regarding custody arrangements that would be in the children's best

interests. The Superior Court issued many orders requiring the children to attend counseling with

defendant Sidney Horowitz, requiring plaintiff and her ex-husband to attend co-parent

counseling with defendant Howard Krieger, and prohibiting plaintiff from publicizing her

complaints about her ex-husband or voicing those complaints within earshot of the children.

According to plaintiff's second amended complaint in this action, throughout 2012

plaintiff enlisted an "ADA advocate" to submit on her behalf requests for accommodations from

the Superior Court, asking, among other things, that the trial court allow plaintiff "the assistance

2

of a disability advocate at [her] own expense," Doc. #18 at 33 ¶ 198 (internal quotation marks omitted), and that the court provide audio recordings of the proceedings, *id.* at 35 ¶ 205. These requests were denied. Plaintiff also sought a continuance of Superior Court proceedings after she suffered a head injury, and she alleges that a continuance was granted but for the wrong reasons. Throughout the proceedings, plaintiff appears to have filed multiple grievances against the named defendant attorneys with various state agencies.

After plaintiff failed to comply with numerous Superior Court orders and did not pay required guardian ad litem fees, the Superior Court entered contempt orders against her. In October 2012, following a trial, defendant Judge Lynda Munro issued a decision and order enumerating the actions taken by plaintiff contrary to her children's best interests and providing plaintiff's ex-husband with sole legal and physical custody of the children, allowing plaintiff occasional visitation only on the condition that she attend therapy sessions with a psychologist recommended by the guardian ad litem. *See Tittle v. Skipp-Tittle*, 2012 WL 5476915, at *12–15 (Conn. Super. Ct. 2012). Judge Munro entered a finding of contempt against plaintiff for failing to comply with previous orders and ordered plaintiff to pay what was owed to the guardian ad litem, including by garnishment of tax refunds. *Id.* at *15.

Plaintiff continued to violate court orders thereafter, leading to her arrest on two occasions. In October 2013, Judge Cutsumpas noted these violations in a decision following additional motion practice, and he denied plaintiff's motion to modify the custody arrangement and/or reinstate a suspended alimony order, encouraging her to continue receiving mental health treatment. *See generally Tittle v. Skipp-Tittle*, 2013 WL 5878970 (Conn. Super. Ct. 2013).

Plaintiff appealed the custody decisions to the Connecticut Appellate Court. In May 2014, the Connecticut Appellate Court affirmed the Superior Court's custody decision. *See Tittle*

*v. Skipp-Tittle*, 150 Conn. App. 64, 89 A.3d 1039, *cert. denied*, 314 Conn. 903, 99 A.3d 1168 (2014).

In the meantime, plaintiff filed the instant federal court complaint in February 2014. Plaintiff's present complaint brings claims against seemingly every party she encountered throughout the state court custody proceedings. She has brought suit against numerous state employees and entities, including state agencies and branches of government (the Connecticut Judicial Branch, the Statewide Bar Counsel's Grievance Panel, and the Judicial Review Council of the State Office of Government Accountability), state court judges (Chief Justice of the Connecticut Supreme Court Chase T. Rogers, Chief Court Administrator Judge Patrick Carroll III, Connecticut Superior Court judges Mark Taylor and Maureen Murphy, former Connecticut Superior Court judge Lynda Munro, and Connecticut Judge Trial Referees Lloyd Cutsumpas and Robert Resha), and Connecticut Judicial Branch employees (Sandra Lugo-Gines, Stephen Grant, Laurie Anton, Christopher Hadad, Tracy Barraco, Martin Libbin, and Debra Kulak). Plaintiff also bring claims against private parties and entities, including therapists Sidney Horowitz, Howard Krieger, and Laura Erhardt, and attorneys Rosemary Giuliano, Christopher Hite, James Hirschfield, and Mary Brigham, as well as defendant Brigham's law office, Mary Piscatelli Brigham, Attorney at Law, LLC.[2] All individual parties are sued in both their official (if any) and individual capacities.

Count One of the complaint alleges under 42 U.S.C. § 1983 that numerous defendants deprived plaintiff of her constitutional right to the care and custody of her children in violation of due process and in violation of the First, Fifth, Sixth, Eighth, Ninth, and Tenth Amendments to the Constitution. *See* Doc. #18 at 15 ¶ 64 *et seq.* The named defendants for Count One include

---

[2] Defendants Hadad, Lugo-Gines, and Erhardt's names are misspelled in the complaint. The Clerk is directed to correct the docket to reflect the proper spellings.

various state judicial officials (Chief Justice Rogers, Chief Court Administrator Carroll, Judge Cutsumpsas, Judge Munro, Judge Murphy, and Judge Resha), judicial branch employees (Anton, Grant, Kulak, and Libbin), one attorney (Brigham), and one therapist (Horowitz).

Count Two alleges under 42 U.S.C. § 1983 that numerous defendants deprived plaintiff of her personal liberty under the Fourteenth Amendment to make independent healthcare decisions. *See* Doc. #18 at 25 ¶ 132 *et seq.* In substance, plaintiff complains that she was ordered by defendant judges upon the recommendation of other non-judge defendants to engage in treatment with a court-appointed psychologist and to submit to specific visitation conditions in order to have visitation with her children. The named defendants for Count Two include state judicial officials (Chief Justice Rogers, Chief Court Administrator Carroll, Judge Cutsumpsas, Judge Munro), judicial branch employees (Anton, Grant, Kulak, and Libbin), attorneys (Brigham and Giuliano), and therapists (Horowitz and Erhardt).

Count Three alleges under 18 U.S.C. § 241 that numerous defendants deprived plaintiff of her right to due process of law by conspiring to orchestrate *ex parte* court hearings and conferences about which plaintiff did not receive notice and at which plaintiff was deprived of assets, income, and child custody. *See* Doc. #18 at 31 ¶ 179 *et seq.* The named defendants for Count Three include a state judicial official (Judge Resha), judicial branch employees (Anton and Barraco), and attorneys (Brigham, Giuliano, Hite, and Hirschfield).

Count Four alleges under 42 U.S.C. § 1983 that numerous defendants deprived plaintiff of her due process right to meaningful access to the courts by denying her reasonable accommodations for her mental illness under the ADA. *See* Doc. #18 at 32 ¶ 192 *et seq.* The named defendants for Count Four include the Connecticut Judicial Branch, various state judicial officials (Chief Justice Rogers, Judge Cutsumpsas, Judge Munro, Judge Resha, and Judge

Taylor), judicial branch employees (Anton, Hadad, and Lugo-Gines), and attorneys (Brigham, Giuliano, Hite, and Hirschfield).

Count Five similarly alleges under 42 U.S.C. § 1983 that numerous defendants deprived plaintiff of her constitutional right to equal protection based on her status as a disabled person. *See* Doc. #18 at 46 ¶ 252 *et seq.* The named defendants for Count Five include the Connecticut Judicial Branch, various state judicial officials (Chief Justice Rogers, Chief Court Administrator Carroll, Judge Cutsumpsas, Judge Munro, and Judge Resha), judicial branch employees (Anton, Grant, Hadad, Libbin, and Kulak), and one attorney (Brigham).

Counts Six through Eleven allege claims of intentional infliction of emotional distress, civil conspiracy, criminal conspiracy, and domestic terrorism. *See id.* at 50 ¶ 280 *et seq.* Although some of these counts reference federal criminal code provisions, it is unclear that they allege a federal civil cause of action. The factual allegations of each of these counts relate to plaintiff's state court divorce and custody proceedings and involve the same or similar alleged misconduct by the same groups of defendants as described above.

The complaint principally seeks relief in the form of injunctions that would undo prior actions of the Connecticut state courts, to compel state court judges to follow the law and to stop discriminating against plaintiff, and to discipline the state court judges for the acts they have taken against plaintiff. *Id.* at 67–69. The complaint further seeks compensatory damages of $1 billion and an order of punitive damages of $10,000 against each defendant judge for each day that plaintiff's children have not had their mother. *Id.* at 69.

Various groups of defendants have filed motions to dismiss the complaint. Docs. #28, #31, #48, #65, #66, #73, #76, #88, #91. Plaintiff filed an untimely response to portions of those motions, along with a renewed motion to appoint counsel, a motion to disqualify the Attorney

General of Connecticut from representing state defendants, a motion for default judgment against certain defendants, and a motion to amend her complaint for the third time to bring additional claims against more defendants and to seek additional forms of relief. Doc. #106.

### DISCUSSION

The principles governing this Court's consideration of a motion to dismiss are well established. First, the Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 159 (2d Cir. 2014). Moreover, I must construe the pleadings of a *pro se* litigant "liberally to raise the strongest arguments they suggest." *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014) (*per curiam*).

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But "that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal quotations marks and citation omitted).

When a defendant moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a plaintiff asserting jurisdiction "has the burden of proving by a preponderance of the evidence that it exists." Fed. R. Civ. P. 12(b)(1); *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (internal quotation marks and citation omitted). In such circumstances, courts may consider "evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Similarly, as to a motion to dismiss for failure to serve process, "[w]hen a defendant

moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (internal quotation marks and citation omitted).

Apart from the standards that govern a motion to dismiss under Rule 12, a federal court must also dismiss an *in forma pauperis* action "at any time" if it determines that an action is "frivolous or malicious," or that it "fails to state a claim on which relief may be granted," or if it "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Patterson v. Rodgers*, 708 F. Supp. 2d 225, 231–32 (D. Conn. 2010).

### Counts One through Five—The Rooker-Feldman Federal Jurisdictional Bar

The *Rooker-Feldman* doctrine jurisdictionally bars plaintiff's federal claims as alleged in Counts One through Five of the complaint. This doctrine generally prevents plaintiffs who have lost in state court from sidestepping the prescribed process for seeking appellate review by state appellate courts and the United States Supreme Court and instead effectively seeking "review" of a state court decision by a federal district court. The doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies in the following four circumstances:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* at 101 (alterations in original) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

Moreover, "because the Second Circuit prohibits district courts from entertaining actions if they are 'inextricably intertwined' with a challenge to the merits of an unreviewable state court determination, a plaintiff cannot evade *Rooker–Feldman* by casting his claim in the guise of a federal civil rights violation." *Kashelkar v. MacCartney*, 79 F. Supp. 2d 370, 372–73 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1262 (2d Cir. 2000); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (*per curiam*) (fraud claims arising from state court mortgage foreclosure action barred under *Rooker-Feldman*); *Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011) (civil RICO claim barred under *Rooker-Feldman* because "a decision in [plaintiff's] favor would effectively amount to declar[ing] the state court judgment fraudulently procured and thus void" (internal quotation marks omitted)); *Koziel v. City Court of Yonkers*, 351 Fed. App'x 470, 471 (2d Cir. 2009) (noting that "[i]nsofar as Appellant seeks to challenge the state procedures for appealing a decision as violating his due process rights, that claim is inextricably intertwined with the judgment of the state court" and barred by the *Rooker-Feldman* doctrine); *Mulready v. Mulready*, 2007 WL 1757055, at *3–4 (D. Conn. 2007) (*Rooker-Feldman* barred review of state court contempt order following plaintiff's failure to pay child support).

After considering these factors, I conclude that I lack subject matter jurisdiction to review any of plaintiff's claims to the extent that they seek to undo or reverse the custody or other related determinations made against plaintiff in the Connecticut state courts. Plaintiff claims she lost numerous rulings and judgments entered in Superior Court, and that the judgments have caused her injury because they resulted in (1) a limitation of plaintiff's custody of her minor

9

children, (2) a requirement that plaintiff attend counseling, (3) a denial of reasonable accommodations for plaintiff's purported disability during custody proceedings, and (4) an order requiring plaintiff to pay fees to the guardian ad litem. Each of the challenged decisions were issued before the filing of this suit, and plaintiff now requests this Court to review and overturn those decisions, or to grant other relief that would require me to review and reconsider those state court decisions.

Count One alleges that defendants, including the Chief Justice, judges, court employees, guardian ad litem, and private attorneys, infringed on plaintiff's constitutional rights to care and custody of her minor children. But plaintiff's injury arises from Superior Court orders limiting plaintiff's custodial rights over her children. Count Two alleges that a similar group of defendants infringed on plaintiff's due process right to make independent healthcare decisions, all in connection with the Superior Court's decision to condition plaintiff's custody of her minor children on her attendance at mental health counseling sessions. Count Three alleges that defendants conspired to orchestrate *ex parte* court hearings and conferences about which plaintiff did not receive notice and at which plaintiff was deprived of assets, income, and child custody; this is no more than a direct procedural due process challenge to the validity of the state court judgments.

All these claims plainly would require me to sit in review of the state court's orders, but there is no federal jurisdiction for me to do so. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars [plaintiff's] challenges to the family court's decisions regarding custody, neglect, and visitation."). Even to the extent that plaintiff's injuries result not from court orders directly, but from court-approved agreements between plaintiff and her ex-husband, they are still state-court dispositions that are unreviewable

under the *Rooker-Feldman* doctrine. *See, e.g.*, *Niles v. Wilshire Inv. Grp., LLC*, 859 F. Supp. 2d 308, 336 (E.D.N.Y. 2012) (noting that "a settlement agreement may constitute a state court judgment for purposes of *Rooker–Feldman*" (internal quotation marks and citation omitted)).

Counts Four and Five challenge the state court's alleged failure to grant plaintiff a reasonable accommodation for her disability in connection with her participation in state court proceedings. These counts would similarly require me to sit in judgment of determinations made by state courts respecting accommodations that were made for plaintiff's disability. Other courts have correctly concluded that such a challenge is barred by the *Rooker-Feldman* doctrine. *See Richter v. Connecticut Judicial Branch*, 2014 WL 1281444, at *8 (D. Conn. 2014) (*Rooker-Feldman* bars adjudication of plaintiff's claims that "perceived disabilities resulted in discrimination in state court judicial proceedings with results adverse to her"); *Grimes v. Florida*, -- F. Supp. 3d --, 2014 WL 6831989, at *3 (M.D. Fla. 2014) (*Rooker-Feldman* bars plaintiff's claim that she was denied disability accommodations to participate in state court proceedings); *see also Dale v. Moore*, 121 F.3d 624, 628 (11th Cir. 1997) (*per curiam*) (noting that "the ADA does not provide an independent source of federal court jurisdiction that overrides the application of the *Rooker–Feldman* doctrine" and that "the ADA does not authorize federal appellate review of final state court decisions").

### *Counts Six through Eleven—Absence of Federal Law Claims*

As to the remaining counts of the complaint (Counts Six through Eleven), I need not consider the application of *Rooker-Feldman*, because they sound in the nature of state law torts or do not allege cognizable federal civil causes of action. Having concluded that I have no jurisdiction over the federal law claims that are explicitly alleged in Counts One through Five, I decline to exercise pendent jurisdiction over these state law claims. *See, e.g.*, *Lundy v. Catholic*

*Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013).

Count Six alleges a state law claim of intentional infliction of emotional distress. Counts Seven through Ten allege civil and criminal conspiracy claims, apparently in reliance on state common law. Count Eleven alleges domestic terrorism. To the extent that the allegations of these counts cite federal statutes, they rely on federal criminal statutes or other statutes that do not themselves create or authorize a federal civil cause of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014); *see also Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008) (noting that "the statutory language does not contain an express civil cause of action, and the Supreme Court has made clear that courts are not to read implied civil causes of action into criminal statutes").

### Immunity

Even if I had jurisdiction over plaintiff's claims for money damages, it is clear that these claims are barred on grounds of immunity. Nearly all claims against the State of Connecticut and the Connecticut Judicial Branch are barred by state sovereign immunity under the Eleventh Amendment to the United States Constitution.[3] *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Islander E. Pipeline Co., LLC v. Connecticut Dep't of Envtl. Prot.*, 482 F.3d 79, 88–89 (2d Cir. 2006). The State of Connecticut has not consented to suit, and plaintiff's state agency claims under § 1983 do not abrogate sovereign immunity. *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004).

All of plaintiff's claims for money damages against the named judicial officials—Chief Justice Rogers, Chief Court Administrator Carroll, Judge Cutsumpsas, Judge Munro, Judge

---

[3] To the extent that Count Four of the second amended complaint alleges state actions that violate both Title II of the ADA and the Fourteenth Amendment, Congress has abrogated sovereign immunity for such claims. *See Bolmer v. Oliveira*, 594 F.3d 134, 146–47 (2d Cir. 2010). But Count Four must be dismissed anyway under the *Rooker-Feldman* doctrine.

Murphy, Judge Resha, and Judge Taylor—are plainly barred by the doctrine of absolute judicial immunity. *See Mireles v. Waco*, 502 U.S. 9 (1991) (*per curiam*). Judges are immune not only to plaintiff's claims for money damages but also to her claims for injunctive relief under § 1983. *See Huminski v. Corsones*, 386 F.3d 116, 137 (2d Cir. 2004). No exception to judicial immunity applies in this case, because the allegations against the judges relate to actions taken in their capacity as judges, rather than to actions in their personal or non-judicial capacity or to actions taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12; *see also Patterson*, 708 F. Supp. 2d at 233–34.

Plaintiff's allegations against state court employees are also barred by immunity. When court employees perform official duties integral to the judicial process, undertake actions pursuant to a judge's direction, or implement judicial orders, they are entitled to quasi-judicial immunity of the same character as the immunity enjoyed by judges. *See Rodriguez v. Weprin*, 116 F.3d 62, 66–67 (2d Cir. 1997) (explaining that "the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process" and even for "functions that are more administrative in character [that] have been undertaken pursuant to the explicit direction of a judicial officer" (internal quotations marks and citation omitted)); *Carrubba v. Moskowitz*, 274 Conn. 533, 542–43, 546, 877 A.2d 773 (2005) (attorneys who perform functions integral to the judicial process are entitled to absolute quasi-judicial immunity). "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature" and are therefore entitled to absolute quasi-judicial immunity. *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). As all of the challenged actions of court

employees were taken in relation to plaintiff's divorce and custody proceedings, the court employees and agents are immune from a claim for money damages.

Plaintiff also challenges actions taken by defendant Mary Brigham as guardian ad litem for plaintiff's minor children. But Brigham acted pursuant to her Superior Court appointment and is therefore similarly entitled to quasi-judicial immunity. *See Lewittes v. Lobis*, 164 F. App'x 97, 98 (2d Cir. 2006); *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 91 (D. Conn. 2005).

### *Failure to Serve Process as to Individual-Capacity Defendants*

Plaintiff's claims against defendant state employees in their *individual* capacities may not proceed, because plaintiff has not timely served process pursuant to Fed. R. Civ. P. 4. There is no evidence that plaintiff attempted to serve or did serve any of these defendants in their individual capacities as required under Connecticut law. *See* Conn. Gen. Stat. § 52-57(a) (providing that an individual defendant must be served in person or at the usual place of abode); *Carlberg v. Loschiavo*, 2014 WL 5858153, at *2 (D. Conn. 2014) (dismissing individual-capacity claim against defendant not properly served). Therefore, I dismiss these claims. Likewise, I dismiss as moot plaintiff's motion to disqualify the State Attorney General as counsel for state employee defendants in their individual capacities (Doc. #106).

### *Plaintiff's Motion to Amend the Complaint*

Plaintiff seeks leave to amend her complaint for a third time to add additional causes of action and to "add and remove litigants." Doc. #106 at 8. Where, as here, a plaintiff seeks leave to amend beyond the time permitted by a court's scheduling order for doing so, a district court may deny an untimely motion to amend for lack of good cause. Fed. R. Civ. P. 15(a)(2), 16(b)(4); *Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009). Because plaintiff has not established good cause to file an amended complaint and

14

because such amendment would be futile to cure the jurisdictional and immunity barriers to her claims for relief, I will deny plaintiff's motion to amend her complaint.

CONCLUSION

For the reasons set forth above, defendants' motions to dismiss (Docs. #28, #31, #48, #65, #66, #73, #76, #88, #91) are GRANTED. Defendants Brigham and Mary Piscatelli Brigham, LLC's motion for judicial notice (Doc. #32) is GRANTED. *See Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("[W]here public records that are integral to a . . . complaint are not attached to it, the court . . . is permitted to take judicial notice of those records."). I construe plaintiff's motion in limine (Doc. #85) as a motion for disability accommodations. To the extent that this motion seeks appointment of counsel, this motion and plaintiff's other motions to appoint counsel (Docs. #43, #106) are DENIED for the same reasons stated in my June 10, 2014 order. *See* Doc. #62. To the extent that the motion (Doc. #85) seeks additional accommodations, it is DENIED as moot. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. #81) is DENIED as moot in light of the fact that the Court has already granted plaintiff leave to proceed *in forma pauperis. See* Doc. #7. Plaintiff's motion to amend her complaint (Doc. #106) is likewise DENIED. As I construe plaintiff's motion for a writ of mandamus (*Ibid*) as an amended claim for relief, I DENY it as moot. Plaintiff's motion for default judgment (*Ibid*) is DENIED and her motion to disqualify counsel (*Ibid*) is DENIED as moot.

The Clerk is directed to close this case.

It is so ordered.

Dated at Bridgeport this 26th day of March 2015.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

15